**TANNER & ORTEGA, L.L.P.**
ATTORNEYS AT LAW
WWW.TANNERORTEGA.COM

HOWARD E. TANNER*
HUGO G. ORTEGA
*MEMBER OF N.Y., N.J. AND D.C. BAR

**NEW YORK CITY OFFICE**
299 BROADWAY
SUITE 1700
NEW YORK, NY 10007
OFFICE: (212) 962-1333
FAX: (212) 962-1778

**WHITE PLAINS OFFICE**
175 MAIN STREET
SUITE 800
WHITE PLAINS, NY 10601
OFFICE: (914) 358-5998
FAX: (914) 761-0995

February 3, 2025

Honorable Philip M. Halpern
United States District Judge
United States District Courthouse
Southern District of New York
300 Quarropas Street
White Plains, NY 10601

BY ECF AND EMAIL/PDF

Re:   *United States v. Jeru Basket*, **24 Cr. 175 (PMH)**
      **Defense Sentencing Letter**

Dear Judge Halpern :

    I submit this sentencing letter on behalf of Jeru Basket, who is scheduled to be sentenced by this Court on Monday, February 24, 2025 at 2:30 pm for his plea of guilty to the only count of the Indictment (ECF Doc No. 5) which charged him with Felon in Possession of a Firearm in violation of 18 USC §922(g)(1). For the reasons set forth in this letter, I respectfully request that the Court impose a Guidelines range sentence of 27 months' imprisonment to be followed by 3 years' Supervised Release. Such sentence would be sufficient, but not greater than necessary, to comply with the purposes set forth in 18 U.S.C. §3553(a).

### Case Background, The Plea Agreement and Probation PSR

    The defendant is in receipt of the Probation Office's Final Presentence Report dated October 21, 2024 (ECF Doc No. 19) ("PSR").

    During the course of a Yonkers Police Department investigation of gang violence in Yonkers, New York, an Instagram account used by Mr. Basket, a former gang member, was monitored. On March 1, 2024, a Yonkers Police detective observed that a video was posted to the defendant's Instagram account which showed a person, who appeared to be the defendant wearing ripped jeans and blue sneakers, and in possession of what appeared to be a firearm in and cash. Yonkers Police then monitored Yonkers municipal surveillance cameras and observed Mr. Basket exit his apartment building, wearing matching clothing to what was seen on Instagram. When he was seen on video adjusting his waistband, Yonkers police were sent out to

1

further observe him. After Mr. Basket was observed picking up his daughter from school, Yonkers police approached him and placed him in handcuffs. The defendant was completely cooperative and admitted to having a gun and told the officers that it was located in his waistband, which was then recovered from his person.

Mr. Basket was charged by Complaint (ECF Doc No. 1) and made his Initial Appearance before the Honorable Victoria Reznik on March 2, 2024, when he was detained on consent. An Indictment (ECF Doc No. 5) was filed on March 25, 2024, charging a single count of Felon in Possession of a Firearm pursuant to 18 USC 922(g)(1). He was arraigned on the Indictment on April 4, 2024 before the Honorable Judith C. McCarthy and detention on consent was continued. The defendant has been incarcerated since his arrest on March 1, 2024, a period of 360 days[1].

The parties were able to reach a pretrial resolution by Plea Agreement, dated May 15, 2024. On July 23, 2024, the defendant appeared before your Honor and pleaded guilty to the single count indictment. The parties stipulated to the following offense level calculations and Criminal History Category under the Guidelines. Specifically, the parties agreed to a base offense level of 20 pursuant to USSG §2K2.l(a)(4)(B). With a three-level reduction for acceptance of responsibility pursuant to U.S.S.G. §§ 3E1.1(a)-(b) the total offense level is 17.

The defendant's 2017 New York State conviction for Criminal Possession of a Weapon in the Second Degree and sentence of 5 years' imprisonment results in three Criminal History Points, places him in Criminal History Category II, which calculates to a Guidelines Range of 27-33 months' imprisonment.

The Probation Office agrees with the sentencing calculation set forth in the Plea Agreement (PSR ¶71) and recommends a top of the Guidelines Range sentence of 33 months' imprisonment to be followed by 3 years' Supervised Release. (PSR, Addendum at 20-22). I respectfully disagree with this recommendation as being greater than necessary. The PSR correctly discusses the underlying facts, giving rise to the defendant's arrest (PSR ¶¶8-18); details the defendant's personal and family background and collateral family interview (PSR ¶¶43-49); Physical and mental health (PSR ¶¶50-55); substance abuse history (PSR ¶¶56-59); and educational, vocational and employment history (PSR ¶¶60-64). Therefore, for the purpose of brevity, I will not repeat those details but focus on how the applicable 18 USC §3553(a) factors support the defense requested Guidelines range sentence of 27 months' imprisonment to be followed by 3 years' Supervised Release.

**Sentencing Considerations**
**Request for a Below Guidelines Sentence**

In *Gall v. United States*, 552 U.S. 38, 49-50 (2007), the Supreme Court held that the guidelines provide a starting point for a reasonable sentence, however, a sentencing court "must make an individualized assessment based on the facts presented." The Court also stated that the sentencing court cannot "presume that the Guidelines range is reasonable." *Id*. As a result, the sentencing court can use the advisory guidelines to create an appropriate sentence after considering the factors enumerated in 18 U.S.C. § 3553(a). That appropriate sentence may be

---

[1] As of the date of the Sentencing Hearing scheduled on February 24, 2025.

outside the guidelines range as long as the "justification is sufficiently compelling to support the degree of the variance." *Gall*, at 50. However, in this case, I submit that a bottom Guidelines sentence of 27 months' imprisonment to be followed by 3 years' Supervised Release is appropriate as being sufficient but not greater than necessary under the totality of circumstances.

Pursuant to *United States v. Booker*, 543 U.S. 220 (2005), I request that the Court consider the aforementioned Guideline range along with the following factors listed in 18 U.S.C. §3553(a):

18 U.S.C. § 3553(a) FACTORS

The nature and circumstances of the offense and the history and characteristics of the defendant.

    a)    The nature and circumstances of the offense

As previously detailed herein, on March 1, 2024, Jeru Basket was observed by police on his Instagram account in possession of a gun. Surveillance video and in-person observation in Yonkers, New York confirmed movements to his waistband consistent with secreting a firearm there. Police stopped the defendant and recovered a gun in his waistband. By his letter to the Court (Ex. A) Jeru recognizes that this is undoubtedly a serious offense, he knew he was not allowed to possess a firearm as a prior felon, was on parole for a similar offense, and realizes the trauma he has caused Robneisha Jones, the mother of his three children as well as to his children, as a result of his arrest, to wit:

> "I want to apologize to my children and the mother of my children first, because I know that my arrest truly traumatized my daughters and they need me the most right now. To the mother of my children who has so much stress because my actions left her alone to raise and provide for our family, and I know she is sick and tired of my childishness. I also want to apologize to everyone involved in this case, my actions and selfish thinking wasted all of our time☐ knowing I am unauthorized to carry a firearm as a felon… I am sincerely taking my own actions to rehabilitate myself of my past traumas from going to prison at a young age and growing up in a rural environment so I can become a productive member of society for myself, and my family." *Id.*

Although not at all excusing his actions, his motivation was not to commit a separate crime with the firearm but to possess it for protection:

> "I never intended to commit any harmful acts and only possessed a weapon for the safety of my life as, well as my children's life due to the fact that I live in a rough neighborhood and my kids go to school in a similar environment." *Id.*

It is also important to note, that Jeru was totally cooperative with police as soon as he was stopped and immediately admitted to them his possession of the gun and where on his person it

would be found. (PSR ¶16). He told the officers at the scene that he was fearful, as a *former* gang member, for himself and his family of being targeted by them for leaving the group and wanting to lead a law-abiding life.

      b)      The history and characteristics of the defendant.

As we regrettably see so often in criminal justice system, absent parents lead to children with serious behavioral issues. Detailed by Probation, Jeru was raised by his paternal grandmother, Donna Basket, due to his mother being very young when he was born and his father, Glen Basket, being absent due to being in and out of prison. (PSR ¶46). Although treated lovingly by his grandmother with his essential needs being met as child, Jeru's parents' absence had a profound effect on him. This manifested itself in acting out at home, seeking a "family" through the comradery of a gang and inevitably to criminal behavior. He was declared a juvenile delinquent and sentenced to one year at Lincoln Hall Residential Facility in 2014 at 16 years old (PSR ¶33). He was adjudicated a "Youthful Offender" by New York State for two cases, cocaine possession and robbery conspiracy, in 2016 at 17 years old, for which he was sentenced concurrently to probation[2]. (PSR ¶¶34, 35). On May 27, 2017, Jeru was convicted in New York State of criminal possession of a loaded gun and sentenced to 5 years' imprisonment and 5 years' post-release supervision. (PSR ¶36).

During each of Jeru's prior sentences of imprisonment, he was repeatedly disciplined by various facilities for misconduct. While detained for his aforementioned Youthful Offender offenses in 2016, he was disciplined five times for such violations as losing his identification card and being disorderly (PSR ¶¶34, 35). While detained at the Westchester County Jail pending his New York State sentence in 2017, he was disciplined approximately 20 times for disruptive and assaultive behavior and while incarcerated after sentence in New York State prison, he was disciplined 19 times for similar conduct. (PSR ¶36).

So, it is extremely notable that there has been a substantial change in Jeru's comportment and attitude during both during his release on New York State supervision, his arrest in the instant case, and while he has been detained at the Hudson County Jail since his arrest. Whether this is due to him maturing at his now 26 years of age or some other reason, the change is noteworthy.

Since his release from New York State prison on post-release supervision on May 4, 2022, until he was arrested in the instant case, a period of 453 days, "[a]s stated by the defendant's parole officer, prior to his arrest for the federal offense the defendant was reporting as directed, residing in his approved residence, and completed a substance use and anger management program. At arrest, Jeru was completely compliant and respectful to law enforcement, admitting to his possession of the gun and telling the officers where it was on his person.[3] He again admitted his possession of the gun during video interrogation, telling law enforcement that he doesn't hang out in the streets anymore, takes care of his children's mother, his kids and works. He possessed the gun for his own protection because he lives in a bad area

---

[2] On April 10, 2018 Probation was revoked and the defendant was resentenced to 239 days imprisonment, which constituted time served.
[3] As shown in police bodycam video disclosed in Rule 16 discovery by the Government (USAO_000114).

and didn't want to be a victim.[4] While detained at the Hudson County Jail since arrest on March 1, 2024, a period of almost a year, Jeru has had no disciplinary incidents, a marked change from his previous periods of detention, and has availed himself of vocational programs while detained there. (Ex. B, Vocational Certificates, attached hereto). After his release, he intends to pursue a commercial driver's license.

Jeru has the support of Robneisha Jones, the mother of his three children, Lola Brielle Basket, age 8; Jela Basket, age 6; and Sole Basket, 3 months. According to Probation's interview of Ms. Jones, Jeru's incarceration has been difficult for her, primarily because she is the sole provider to their three minor children including a newborn to whom she gave birth following Jeru's arrest. She confirmed that he assisted her greatly in walking their daughters to school and he made meals for the family. Jeru is certainly welcome to come back home to live with her and their children. Ms. Jones believes that Jeru possessed a firearm for protection and truly believes that he is interested in living an honest life when released. (PSR ¶49). Letters in support of Jeru (Ex. C) attest to his commitment to volunteer work in helping children with the JCCA Program in New Rochelle, New York and his positive development and growth as a person as seen during his participation at Life Church in Mount Vernon, New York.

I therefore ask the Court to consider the aforementioned described positive changes in Jeru as a mitigating factor in determining a proper and just sentence.

The need for the sentence imposed. 18 U.S.C. § 3553(a)(2).

(a) To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(b) To afford adequate deterrence to criminal conduct and protection for the public.

I submit that the defense requested Guidelines range sentence of 27 months would be consistent with the above factors and a sufficient but not greater than necessary sentence for Jeru's conduct in this case. Indeed, Probation all but ignores the aforementioned mitigating factors in their request for a top of the Guidelines sentence of 33 months. Respectfully, does an extra 6 months of jail mean the difference between a sentence which promotes respect for the law and one that does not? Does an additional 6 months of jail mean the difference between a sentence that affords adequate deterrence and protection for the public and one that does not? The Guidelines here are in a very narrow range and Probation does not adequately address why 33 months' imprisonment is sufficient but 27 months is not. I submit that Jeru understands the gravity of his conduct in this case and that imposition of a sentence above 27 months would be simply punitive. I expect that Jeru will further address the Court about his conduct in this case prior to the imposition of sentence.

## CONCLUSION

In sum, the defense requested Guidelines range sentence of 27 months imprisonment, to be followed by 3 years of Supervised Release would demonstrate leniency, yet also fulfill the

---

[4] As shown in police interrogation video of the defendant disclosed in Rule 16 discovery by the Government

goals pursuant to 18 U.S.C. § 3553(a): (1) promotion of respect for the law by imposing a term of imprisonment sufficient to demonstrate condemnation of the defendant's actions; (2) provide adequate deterrence to the defendant and others from future similar conduct; (3) protection for the public and (4) afford the opportunity for reformation and rehabilitation.  All of the goals of sentencing would be accomplished, sufficient but not greater than necessary, in order to achieve the aforementioned purposes. I urge the Court to impose such sentence.

          Very truly yours,

          Tanner & Ortega, L.L.P.

          Howard E. Tanner

cc:    AUSA Jared D. Hoffman (By ECF and Email/PDF)
        AUSA Benjamin Levander (By ECF and Email/PDF)